**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

|                                                      |     |                          |
|------------------------------------------------------|-----|--------------------------|
| UNITED STATES OF AMERICA,                            | :   |                          |
|                                                      | :   |                          |
|                                                      | :   |                          |
|                                                      | :   | **OPINION**              |
| v.                                                   | :   |                          |
|                                                      | :   | No. 13-cr-00096 (WHW)    |
| LINDA YARLEQUE and FABIO MORENO VARGAS,              | :   |                          |
|                                                      | :   |                          |
| Defendants.                                          | :   |                          |
|                                                      | :   |                          |
|                                                      | :   |                          |
|                                                      | :   |                          |

_____

**Walls, Senior District Judge**

Defendants Linda Yarleque ("Yarleque") and Fabio Moreno Vargas ("Moreno") (collectively, "Defendants") move for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) and for a new trial pursuant to Federal Rule of Criminal Procedure 33.[1] For the reasons set forth herein, Defendants' motions are denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 5, 2013, the United States Government (the "Government") obtained a two-count indictment against Defendants, husband and wife residing in Westwood, New Jersey. Defs' App'x at 1-18 (ECF No. 93). Count One charged that between or about July 2003 and about January 2007, Defendants conspired with each other and an individual named David Martin (referred to in the indictment as "Individual 1") to commit wire fraud affecting financial

---

[1] While initially only Moreno filed motions for judgment of acquittal and for a new trial, Yarleque subsequently joined in those motions and in the brief submitted by Moreno in support of those motions. _See_ ECF Nos. 67, 96.

institutions by engaging in a mortgage fraud scheme involving the transmission of interstate wire communications in violation of 18 U.S.C. § 1349 (2006). *Id.* Count Two charged that Defendants committed bank fraud when they obtained a particular fraudulent mortgage loan from a federally insured financial institution, American Partners Bank, in December 2006, in violation of 18 U.S.C. §§ 1344, 2. Both Defendants pleaded "not guilty" to the indictment and trial began on November 12, 2013. *Id.* On November 19, 2013, the Government rested its case and Moreno moved for a judgment of acquittal under Rule 29 (and Yarleque joined in that motion). Defs.' Br. in Support of Mots. for J. of Acquital and New Trial ("Defs.' Br.") at 6 (ECF No. 93). The Court denied that motion. *Id.* On November 21, 2013, the jury found both Defendants guilty on both counts. *Id.* On December 2, 2013, Moreno filed motions for judgment of acquittal and for a new trial, which Yarleque subsequently joined. *See* ECF Nos. 67, 96. Following the schedule established by the Court, which was extended for various reasons including the substitution of a new attorney for Moreno, Moreno submitted a brief in support of these motions (which Yarleque joined) on March 14, 2014. ECF No. 93. The Government submitted its opposition on March 25, 2014. ECF No. 95.

## DISCUSSION

Defendants move for (1) judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) and (2) a new trial pursuant to Federal Rule of Criminal Procedure 33. Defendants' motions are denied.

### I. Defendants' Motion for Judgment of Acquittal Under Federal Rule of Criminal Procedure 29(c)

Defendants move under Federal Rule of Criminal Procedure 29(c) for a judgment of acquittal, acknowledging that the Court denied an identical motion made at the close of evidence. Defs.' Br. at 24-25. Defendants argue that no rational juror could have convicted them based on the evidence presented at trial, and in particular that the Government failed to introduce evidence

from which the jury could have concluded, beyond a reasonable doubt, that Defendants acted knowingly and with fraudulent intent when they made false statements to the mortgage lenders.

The Court's duty in considering a motion for judgment of acquittal under Rule 29 is to determine "whether, after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." *United States v. Lore*, 430 F.3d 190, 203 (3d Cir. 2005) (internal citation omitted). In considering a motion for a judgment of acquittal, "a court 'must be ever vigilant in the context of Fed. R. Crim. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury.'" *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). Instead, the Court "must view the evidence and the inferences logically deducible therefrom in the light most favorable to the government," *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989), and must resolve all credibility issues in the government's favor, *see United States v. Scanzello*, 832 F.2d 18, 21 (3d Cir. 1987). The Court must uphold the jury's verdict as long as "any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Claxton*, 685 F.3d 300, 305 (3d Cir. 2012) (internal citation omitted).

Defendants argue that relief under Rule 29(c) is necessary here because the Government failed to introduce evidence from which the jury could have concluded, beyond a reasonable doubt, that Defendants acted knowingly and with fraudulent intent when they made false statements to the mortgage lenders. In making this argument, Defendants contend that while the mortgage documents (called "1003s") were signed by Moreno on the dates of the closings, the Government

failed to prove beyond a reasonable doubt that Moreno knew about the falsity of the documents. Defs.' Br. at 30. Defendants contend that they had "every reason to trust" David Martin, who was a mortgage broker and C.P.A., and who was also related to Yarleque by marriage. *Id.* Defendants also point out that the Government "conceded" that David Martin was a "crooked mortgage broker." *Id.* at 30. They argue that it was David Martin that controlled the preparation of the initial and final mortgage applications and the verbal verifications of employment that the lenders required, *id.* at 30-31, and that it was David Martin that "filled in all of the numbers," and that the lies on the mortgage application forms "were put there by David Martin." *Id.* at 31. Defendants also support their argument that they did not act with the requisite intent by stating that "mortgage closings are extremely complex" and that "few individuals actually thoroughly review the documents they sign at the closings . . . ." *Id.*

Defendants also argue that this case is similar to *United States v. Phillips*, 731 F.3d 649 (7th Cir. 2013), where the Seventh Circuit Court of Appeals reversed convictions for knowingly violating and conspiring to violate 18 U.S.C. § 1014, which criminalizes "knowingly mak[ing] any false statement . . . for the purpose of influencing in any way the action of" any specified private or public entity that provides, or regulates the provision of, financial services (including federally insured banks). In that case, the defendants—a couple who had secured a mortgage with help of a mortgage broker—were found guilty of knowingly making a false statement to the lender because they included their combined income on the loan application even though only one of them was listed on the application as a borrower. *Id.* at 650-52. The defendants appealed, arguing that testimony they intended to give that the broker had informed them that it was proper to include both defendants' combined income on the loan application was improperly excluded by the district court. *Id.* The Seventh Circuit agreed and reversed, finding that, if believed, the testimony tended

to show that the statement on the loan application that overstated the borrower's income was either not intended to be false, or, at a minimum, not intended to influence the lender. *Id*. Defendants argue that *Phillips* "highlights the need for the government to show that the loan statements made by the defendants Moreno and Yarleque had to be knowingly false in order to sustain the conviction." Defs.' Br. at 30.

The Government responds to these arguments by stating that there was "copious" evidence introduced at trial from which a rational juror could find that the charged offense of conspiracy to commit wire fraud and bank fraud had been proven beyond a reasonable doubt. Gov't Br. at 13. The Government contends that Defendants personally signed and initialed the fraudulent loan applications at least ten times (in contrast to *Phillips*, which involved a single fraudulent application), and that in many instances they signed or initialed immediately above or below the false statements on the application. Gov't Br. at 13. More significantly, according to the Government, when the lenders called to verify the employment information and income information provided in the mortgage applications, those calls were routed through a virtual telephone number that Defendants set up in Moreno's name and that of his purported business, and then directed to Defendants' own personal cell phones. *Id.* at 13-14. The Government states that the individuals that answered these calls—"and the jury certainly was entitled to conclude from the evidence that it was the defendants themselves"—falsely verified Defendants' employment. *Id.* at 14.

The Court agrees with the Government that given the "copious" evidence introduced at trial, and viewing that evidence "and the inferences logically deducible therefrom in the light most favorable to the government," *McNeill*, 887 F.2d at 450, Defendants' motion for judgment of acquittal must be denied. A great deal of evidence was introduced at trial that is quite probative of

Defendants' state of mind at the time these crimes were committed. That evidence included the signed and initialed mortgage applications, the volume of fraudulent loans and documentation supporting those many loans, the telephonic verifications of employment that were forwarded to Defendants' personal cell phones, and the testimony of Fatima Muller that Yarleque had informed her of the mortgage scheme and suggested that she copy it. *See* Defs.' Br. at 25-27. The Court easily finds that a rational juror could have found that Defendants must have known of the false statements in the loan applications and therefore could have found proof of guilt beyond a reasonable doubt on both counts based on the available evidence. Defendants' motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c) is denied.

## II.     Defendants' Motion for a New Trial Under Federal Rule of Criminal Procedure 33

Defendants move under Federal Rule of Criminal Procedure 33 for a new trial, arguing that the Court improperly restricted the scope of cross-examination and as a result violated Defendants' Fifth and Sixth Amendment rights to confront witnesses against them and to present a defense. More specifically, Defendants argue that the Court erred when it allegedly prevented counsel from cross-examining lending representatives regarding "whether the lenders . . . were . . . corrupt, reckless, negligent, or even sloppy" in approving the loans fraudulently sought by Defendants. Defs.' Br. at 42. Defendants argue that such cross-examination should have been permitted for two main reasons: first, to "impeach fully the credibility of David Martin," who did not appear as a witness at trial, and second, to advance the defense that "the combination of Martin/Residential Mortgage/the mortgage lenders encouraged and ultimately led Martin to prepare the false documents without the defendants' knowledge." Defs.' Br. at 42, 43-44.

Federal Rule of Criminal Procedure 33 establishes that a court "may vacate any judgment and grant a new trial if the interest of justice requires." Because the interest of justice does not require a new trial, Defendants' motion is denied.

### A. Defendants' Sixth Amendment Cross-Examination Rights

Defendants first argue that the Court violated their Sixth Amendment cross-examination rights when it prevented Defendants from cross-examining lending representatives on "whether the lenders . . . were . . . corrupt, reckless, negligent, or even sloppy" in approving the loans fraudulently sought by Defendants. Defs.' Br. at 42.

The Sixth Amendment to the U.S. Constitution gives a defendant the right to cross-examine the government's witnesses in order to probe their credibility and potential bias. *See, e.g.*, *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *Smith v. Illinois*, 390 U.S. 129, 131 (1968); *Pointer v. Texas*, 380 U.S. 400, 404 (1965). "However, a district court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *United States v. John-Baptiste*, No. 12-2301, 2014 WL 627685, at *18 (3d Cir. Feb. 19, 2004) (citation and punctuation omitted). The Confrontation Clause guarantees "an *opportunity* for effective cross-examination," and not "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal citation omitted). The Third Circuit has rejected the claim that the Confrontation Clause endows a defendant with the unfettered ability to use the cross-examination of government witnesses as a means of presenting his or her defense to the jury. *See United States v. Stadtmauer*, 620 F.3d 238, 273 n.42 (3d Cir. 2010). Instead, the "mode and order of interrogating witnesses and presenting evidence" remains within the broad

discretion of the Court, under Federal Rule of Evidence 611(a), and that discretion enables the Court to place reasonable limits on cross-examination and to control the timing of the presentation of evidence to the jury. *Id.* at 272-73.

Defendants argue that by limiting the cross-examination of the witnesses for the lenders, "the Court in a very real sense restricted the ability of the defense to impeach fully the credibility of David Martin—bearing in mind that the defense for both defendants was that David Martin falsified the loan applications on his own." Defs.' Br. at 42. According to Defendants, "[t]he more corrupt and/or reckless the lenders, the greater the probability that the corrupt David Martin would feel emboldened enough to falsify all of the loans without defendant's knowledge." *Id.* Defendants again rely on *United States v. Phillips*, 731 F.3d 649 (7th Cir. 2013) to support its argument that the Court erred when it disallowed cross-examination of the Government witnesses from the lending institutions (the "lenders' witnesses") on the topic of the negligence or recklessness of the lenders. Defendants argue that *Phillips*, where the district court improperly prevented defendants from presenting testimony about what their mortgage broker told them about the meaning of "borrower's income" in the mortgage application, supports the proposition that Defendants in this case should have been allowed to cross-examine Government witnesses on the recklessness of the mortgage industry. Defs.' Br. at 44.

The Government responds by stating that the Court acted well within the bounds of the "wide latitude" it is afforded regarding cross-examination when it "on occasion limited—but never excluded entirely—lengthy and often redundant cross-examination about the lenders' underwriting practices and the 'bundling' and resale of mortgages in the secondary market." Gov't Br. at 16. The Government states that the Court "properly found this testimony to be both repetitive and marginally relevant, not to mention fraught with the capacity to confuse the issues at trial." *Id.*

The Government also argues that Defendants' arguments as to the Confrontation Clause have nothing to do with confronting the witness on the stand—which is the function of the Confrontation Clause—but rather are aimed at two other purposes: (1) "impeaching" David Martin, who was not a witness called in the case, and (2) advancing "not only the heart of the defense but basically the entire defense; i.e., that the combination of Martin/Residential Mortgage/the mortgage lenders encouraged and ultimately led Martin to prepare the false documents without the defendants' knowledge." Gov't Br. at 16-17. The Government states that there "is no Confrontation Clause right, however, to cross-examine one witness in order to 'impeach' someone else, especially if that second person is not a witness in the case at all." *Id.* at 17. And because the Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, and not "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish," the Government contends that Defendants argument that it was not able to present its whole defense through cross-examination of the lenders' witnesses is misplaced. *Van Arsdall*, 475 U.S. at 679.

The Government also contends that *Phillips* has no applicability to this case. It argues that while in *Phillips* there was testimony offered regarding statements made to the defendants at the time they signed the fraudulent loan applications (evidence that was offered in defendants' own case, and not in the form of cross-examination of government witnesses), there was no such testimony offered in this case. Gov't Br. at 18. The Government also contends that the type of testimony that Defendants did seek to elicit through cross-examination was largely permitted, not excluded, by the Court. *Id.* The Government suggests that "the occasional limits that the Court placed on the scope of defendants' cross-examination were manifestly appropriate" because the subject matter that defendants attempted to and did pursue—"the lenders' alleged lack of diligence in uncovering defendants' lies, springing from their own desire to quickly sell the loans on the

secondary market"—was "grossly attenuated from the issue of defendants' own knowledge and intent and thus minimally probative, if at all, of any fact in issue in the case." Gov't Br. at 18-19.

The Court agrees with the Government that Defendants' rights under the Sixth Amendment's Confrontation Clause were not violated and it follows that a new trial is not warranted under Rule 33.

As an initial matter, the Court did allow Defendants, to the extent it believed was appropriate, to question the lenders' witnesses on the subject matter of underwriting standards (Tr. 11/13/13 at 107; Tr. 11/19/13 at 86-88), sales of mortgage bundles in the secondary market (Tr. 11/13/13 at 118; Tr. 11/14/13 at 66), "red flags" in Defendants' loan applications that the lenders, according to the defense, should have further investigated (Tr. 11/14/13 at 106, 125-28; Tr. 11/19/13 at 86-88), "collusion" between the lender and David Martin's brokerage "to push through as many mortgages as possible" (11/14/13 at 111), and David Martin's familiarity with the underwriting process such that it would be easier to deceive the lenders (Tr. 11/19/13 at 91-92). The Court also made clear to Defendants that it was perfectly willing to allow the defense to argue that the jury should conclude that, because of lender negligence or for other reasons, David Martin was able to falsify Defendants' loan applications without their knowledge, but that it would be "up to [the defense] to demonstrate." Tr. 11/18/13 at 95-99. As a result, Defendants arguments that the Court prevented them from developing their complete defense is without merit. The Court permitted questioning on cross-examination to the extent it thought relevant and appropriate, but when such cross-examination became repetitive, cumulative, irrelevant, prejudicial, or aimed at jury nullification, it sustained the Government's objections to allowing such questioning. Such determinations are well within this Court's "wide latitude" to impose "reasonable limits" on cross-examination. *John-Baptiste*, 2014 WL 627685, at *18.

The Court also finds no merit to Defendants' argument that their Confrontation Clause rights were violated because they should have been permitted to further cross-examine the lenders' witnesses in order to "impeach" David Martin. The Confrontation Clause guarantees a defendant the right to demand the physical presence of a declarant and an opportunity to cross-examine him or her. *See Davis*, 415 U.S. at 315-16. It does not guarantee the right to cross-examine one witness in order to "impeach" someone else. *See United States v. Burton*, 937 F.2d 324, 328-29 (7th Cir. 1991).

Finally, the Court agrees with the Government that the holding in *Phillips* is off target. In *Phillips*, the testimony that was improperly excluded was testimony offered by defendants regarding statements made to the defendants at the time they signed the fraudulent loan applications (evidence that was offered in defendants' own case, and not in the form of cross-examination of government witnesses, in order to prove that the broker's lie had caused them to believe that their statement in their loan application was true). There was no analogous testimony offered in this case.

### B. Defendants' Right to Present a Defense

Defendants also support their request for a new trial by arguing that they were precluded from presenting a meaningful defense in their trial in violation of the United States Supreme Court's holding in *Holmes v. South Carolina* that a criminal defendant is reasonably entitled to "a meaningful opportunity to present a complete defense." 547 U.S. 319, 324 (2006). Defendants argue that because they were not permitted to cross-examine the lenders' witnesses about "whether the lenders . . . were . . . corrupt, reckless, negligent, or even sloppy" in approving the loans fraudulently sought by Defendants," Defs.' Br. at 42, they were not able to fully advance the defense that "the combination of Martin/Residential Mortgage/the mortgage lenders encouraged

and ultimately led Martin to prepare the false documents without the defendants' knowledge," *id.* at 43-44.

The Government responds by stating that whether such a claim is analyzed under the Compulsory Process clause of the Sixth Amendment or the Due Process clause of the Fifth Amendment, such a claim requires defendant to show "[f]irst, that he was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." *Gov't of the Virgin Islands v. Mills*, 956 F.2d 443, 446 (3d Cir. 1992). The Government argues that Defendants cannot meet this standard because they were not "deprived" of the opportunity to present evidence that they sought to introduce, any such evidence was neither "material" nor particularly "favorable" to their defense given its attenuation, and the limits the Court imposed were not "arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." Gov't Br. at 19-20. The Government argues that if Defendants wanted to put on a case, they could have put on a case. They could have called witnesses, including themselves and David Martin, or persisted in calling an expert witness to testify about lending practices and mortgage brokers.[2] The Government recognizes that Defendants chose not to do so, as was their right under the Fifth Amendment, but argues that not doing so was their own choice and not the result of any "deprivation" by the Court. *Id.* at 20.

The Court disagrees with Defendants that they were precluded from presenting a meaningful defense at trial. Again, the Court did allow Defendants to present their defense theory

---

[2] Defendants initially indicated their plan to call such an expert witness, which the Government objected to. Defendants withdrew the expert before the Court ever ruled on whether the evidence would be admitted. *See* Tr. 11/19/13 at 3.

when it allowed them to question the lenders' witnesses on the subject matter of underwriting standards (Tr. 11/13/13 at 107; Tr. 11/19/13 at 86-88), sales of mortgage bundles in the secondary market (Tr. 11/13/13 at 118; Tr. 11/14/13 at 66), "red flags" in Defendants' loan applications that the lenders, according to the defense, should have further investigated (Tr. 11/14/13 at 106, 125-28; Tr. 11/19/13 at 86-88), "collusion" between the lender and David Martin's brokerage "to push through as many mortgages as possible" (11/14/13 at 111), and David Martin's familiarity with the underwriting process such that it would be easier to deceive the lenders (Tr. 11/19/13 at 91-92). The Court also made clear to Defendants that it was willing to allow the defense to argue that the jury should conclude that, because of lender negligence or for other reasons, David Martin was able to falsify Defendants' loan applications without their knowledge, but that it would be "up to [the defense] to demonstrate." Tr. 11/18/13 at 95-99. The Court did not "deprive" Defendants of the opportunity to present evidence in their favor, but rather only restricted cross-examination to the extent it was repetitive, cumulative, irrelevant, prejudicial, or aimed at jury nullification. Such restrictions were not "arbitrary or disproportionate to any legitimate evidentiary or procedural purpose," *Mills*, 956 F.2d at 446, but were necessary in light of the Federal Rules of Evidence.

## CONCLUSION

Defendants' motions are denied. An appropriate order follows.


Date: April 14, 2014


/s/ **William H. Walls**
United States Senior District Judge